504 A.2d 653

**BOARD OF EDUCATION OF WASHINGTON COUNTY, et al.**

v.

**Joy M. RENEHAN (Staley) et al.**

**No. 1112, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 10, 1986.

Certiorari Granted May 5, 1986.

Russell R. Marks (Mackley, Gilbert & Marks, on brief), Hagerstown, for appellants.

William C. Wantz (Kaylor & Wantz, on brief), Hagerstown, for appellees.

Argued before ADKINS, BLOOM and WENNER, JJ.

WENNER, Judge.

In this sequel to a workmen's compensation case, the Circuit Court for Washington County ordered the Board of Education of Washington County, employer, and Twin City Fire Insurance Company, insurer, to pay counsel fees of $3255.00 to William C. Wantz, the attorney for the claimant, Joy M. Renehan Staley. The employer and insurer appeal.

The facts in this case are not in dispute.[1] The claimant, a teacher employed by the Board of Education, sustained an accidental injury, in the course of her employment. After having found that the claimant had suffered permanent partial disability amounting to 50 percent industrial loss of use of her body as a result of that injury, the Workmen's Compensation Commission awarded her $166.00 per week for 333 weeks, a total of $55,278.00, beginning August 16, 1982.

The employer and the insurer appealed the award to the Circuit Court for Washington County. After a trial *de novo* without a jury, the court determined that the Commission had erred, and the claimant had actually suffered permanent partial disability amounting to 35 percent industrial loss of use of her body as a result of her injury. Consequently, the claimant's award was modified to provide benefits at the rate of $83.00 per week for 175 weeks, a total of $14,525.00, beginning August 16, 1982.

While the appeal was pending in the circuit court, appellants continued to pay compensation benefits to the claim-

---

1. This case comes to us as an expedited appeal pursuant to Rule 1029. *See also* Rule 1026(e).

ant at the rate of $166.00 per week as they were obligated by law to do. By the time the claimant's award was modified, appellants had already paid her a total of $23,-900.68, which exceeded the amount due her under the modified award by $9,375.68.[2]

Prior to the modification of its original compensation award, the Commission approved Mr. Wantz's petition for an attorney's fee of $6,100.00, to be paid from the final weeks of compensation due the claimant. After the modification of the claimant's award, Mr. Wantz filed with the Commission a revised petition for attorney's fees, which resulted in a reduced award of $3,255.00, to be paid from the final weeks of compensation due the claimant.

We are now called upon to decide whether appellants must pay $3,255.00 in attorney's fees to the claimant's attorney even though the amount already paid to the claimant exceeded the total sum due her under the modified award. We do not think they should be required to do so.

Article 101, Section 57 of the Annotated Code of Maryland gives the Commission the power to control the fees which an attorney may charge for handling a workmen's compensation case by requiring the Commission's approval before an attorney may charge or collect a fee. Section 57 also imposes a lien upon the compensation award to a claimant to the extent of the approved fee but provides that the fee "shall be paid therefrom only in the manner fixed by the Commission."[3]

---

2. Appellants concede, as they must, that they are not entitled to recover this overpayment from the claimant.

3. The Commission pursuant to Article 101, Section 10 of the Code has promulgated COMAR 14.09.01.21 which provides in subsection F:
 The filing of a petition for a fee with the Commission and service of a copy on the employer and insurer, self-insurer, or the State Accident Fund, as the case may be, shall be notice to the employer and insurer, self-insurer, or the State Accident Fund, to reserve in escrow the amount of fee requested in the petition until the fee is approved by the Commission.

Section 57 serves two purposes: (1) it protects the claimant from excessive legal fees; and (2) it facilitates the collection by the claimant's attorney of the fee as approved by the Commission.

The Court of Appeals has expressed it thusly:

[T]his section affords counsel a degree of protection by imposing a statutory lien for his benefit upon a portion of the compensation awarded the employee....

... [T]he statute then merely gives an attorney a lien upon this compensation award to the extent of his fee as approved by the Commission. This does not change the underlying relationship which exists among the petitioners, the respondent, and her attorney. Nor is the ownership of the compensation award, which is a chose in action, destroyed simply because a statutory lien has been imposed upon it. Like any other lien, this lien does not create an ownership interest in the attorney, but merely places a charge upon the fund as security for the debt which is owed to the attorney by his client.

*Chanticleer Skyline Room, Inc. v. Greer,* 271 Md. 693, 700–701, 319 A.2d 802 (1974) (citations and footnote omitted).

The protection afforded to the attorney by Section 57 is not, however, absolute.

 In Maryland, the claimant, not the employer or insurer, is liable for his or her own counsel fees. *Feissner v. Prince George's County,* 282 Md. 413, 384 A.2d 742 (1978). It is also clear that insofar as the employer or insurer is concerned the lien claimed for attorney's fees does not exist independently from the claimant's compensation award. Moreover, the employer is not obligated to pay a claimant's attorney from its own funds "unless it ignored a valid lien." *Prince George's County v. Feissner,* 37 Md.App. 124, 139, 377 A.2d 1185 (1977), *aff'd.,* 282 Md. 413, 384 A.2d 742 (1978). Or, stated differently, there must be a fund to which the lien can attach in order for the lien to be valid as against an employer or insurer. If an employer pays counsel fees from escrowed funds, two purposes are

served. First, the employee's obligation to pay his attorney is discharged; and secondly, the employer's obligation to pay those funds to the employee is discharged. *Chanticleer Skyline Room, Inc. v. Greer,* 19 Md.App. 100, 106, 309 A.2d 638 (1973), *aff'd.,* 271 Md. 693, 319 A.2d 802 (1974).

In the case *sub judice,* appellants were obligated to "reserve in escrow" the amount requested by the claimant's attorney in his petition, until it was approved; after it was approved, a lien existed on the claimant's award for the amount of the fee approved by the Commission. This meant that appellants were not to disburse the amounts approved as attorney's fees to the claimant but were to accumulate that amount from the final weeks of compensation due the claimant, as ordered by the Commission, and pay over these funds to the claimant's attorney.

Unfortunately for the claimant's attorney, once the claimant's award was reduced as a result of the appeal to the circuit court, the employer was no longer able to reserve funds for the benefit of the attorney. Appellants were obligated by law to continue payments to the claimant during the appeal. The point at which they were to begin holding funds for the benefit of the attorney was never reached because when the award was reduced the funds had been exhausted by the payments already made by appellants up to that date.[1]

As a general rule, a lien may be lost by operation of law, as, for example, when the subject matter upon which the lien has attached has been destroyed. *See,* 53 C.J.S. *Liens* § 17c. When a lien exists as a charge on property as security for a debt and there is no longer a debt or duty owing, no lien can be claimed. *Harbor Village At Saga Bay, Inc. v. Dahm,* 367 So.2d 1100 (Fla.App.1979).

---

**4.** We are aware that insurers, including self-insurers, usually pay the attorney's fee immediately upon approval. Patently, to do so, they accelerate the "final weeks" of compensation due to the claimant.

> [W]here the lien is asserted against a chose in action, the value of the lien as security may be destroyed or diminished by payment, discharge in bankruptcy, or other event, just as surely as the value of a lien on a horse may be nullified by the death of the horse.

*United States v. Salerno*, 222 F.Supp. 664, 669 (D.Nev. 1963), *modified and affirmed as modified, sub nom. Mutual Life Ins. Co. of N.Y. v. U.S.*, 343 F.2d 71 (9th Cir.1965).

The Commission, as noted, ordered appellants to pay the claimant first and then pay her attorney from the final weeks due. Those weeks never arrived.[5] Thus, since appellants were no longer obligated to pay anything to the claimant and inasmuch as they did not ignore a valid lien, they were not obligated to pay her attorney.

■ We hold, on the facts in this case, that once the claimant's award was reduced to the point that she was already overpaid, the appellants were correct in terminating all further payments. It would be contrary to common sense and sound policy to compel appellants to continue making payments to satisfy claimant's debt to her attorney.[6]

We are not yet finished, however. In their brief, appellees complain that the circuit court should have granted their motion to dismiss, alleging that appellants' appeal to

---

5. Contrary to the dicta contained in *Feissner*, 37 Md.App. at 131 n. 2, the compensation award creates an obligation to pay an amount certain for a specified number of weeks. There is no requirement that the total amount be set aside as a "fund" to which the lien can attach. The Commission has decided that the claimant is to be paid first and the attorney last, thus creating the possibility that the problem at hand would arise.

6. There is no merit to appellee's argument that appellants, if they prevail, will have succeeded in recovering an overpayment of workmen's compensation benefits made to the claimant during the appeal. On the contrary, were we to leave the judgment below intact, we would, in essence, be compelling appellants to continue to make additional overpayments after the Commission had determined sufficient compensation had been paid and the employer's obligation satisfied. The overpayments already received by the claimant at the time the award was reduced was hers to keep.

the circuit court was not filed within thirty days from the date on which the Commission approved Wantz's fee petition.

The appellants had no reason to appeal any of the orders issued by the Commission with respect to Wantz's fee because, as we have already noted, those orders created no legal obligation between appellants and Wantz except to the extent appellants were in possession of funds due the claimant.

This appeal is properly before us, having been filed following the judgment entered against appellants by the Circuit Court for Washington County in response to Wantz's complaint seeking enforcement of his lien for attorney's fees.

JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEES.